# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**MICHAEL SHILBAUER,**

      **Plaintiff,**

v.                                          Case No. 23-CV-1158

**UNKNOWN NURSE PRACTITIONERS,
CO HAGLUND, CO RODRIGUIZ,
CO DIXON-WARD, and
CO STANOVICH,**

      **Defendants.**

---

## ORDER

---

Plaintiff Michael Shilbauer, who is currently confined at the Milwaukee Secure Detention Facility and representing himself, filed a complaint under 42 U.S.C. § 1983 alleging that the defendants violated his constitutional rights. (ECF No. 1.) Shilbauer also filed a motion for leave to proceed without prepayment of the filing fee. (ECF No. 3.) This order resolves his motion and screens his complaint.

**MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE**

The Prison Litigation Reform Act (PLRA) applies to this case because Shilbauer was incarcerated when he filed his complaint. *See* 28 U.S.C. § 1915(h). The PLRA allows the court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He

must then pay the balance of the $350 filing fee over time through deductions from his prisoner account. *Id.*

On September 15, 2023, Shilbauer filed a motion for leave to proceed without prepayment of the filing fee. (ECF No. 3) On September 18, 2023, the court ordered that Shilbauer shall pay $15.60 as an initial partial filing fee by October 18, 2023. (ECF No. 6.) Shilbauer paid the fee on October 11, 2023. The court will grant Shilbauer's motion for leave to proceed without prepayment of the filing fee and allow him to pay the full filing fee over time in the manner explained at the end of this order.

## SCREENING OF THE COMPLAINT

*Federal Screening Standard*

Under the PLRA the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim the court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim a complaint must include "a short and plain statement of the claim showing

2

that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983 a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under color of state law. *D.S. v. E. Morris Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes *pro se* complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

*Shilbauer's Allegations*

Shilbauer alleges that while he was incarcerated at the House of Corrections (k/n/a the Community Reintegration Center) during the early part of December 2020 he noticed an ingrown hair on his leg. (ECF No. 1, ¶¶ 5, 17.) After several days passed, he noticed that the ingrown hair had formed a pimple and there was pus coming out from it. (*Id.*, ¶ 18.) He complained to various unknown registered nurses

3

(RNs) about the pus while they were handing out medication on the housing unit, but all the RNs did was provide Shilbauer with Band-Aids. (*Id.*, ¶¶ 19-20.)

Several more days passed and Shilbauer noticed that the ingrown hair had caused his left thigh to become inflamed and painful. (ECF No. 1, ¶ 22.) He put in a medical request for an examination, known as a "blue slip", explaining that his leg was inflamed and that he was in pain. (*Id.*, ¶ 22.) Several more days passed and Shilbauer was not seen in the Health Services Unit (HSU). (*Id.*, ¶ 23.) His entire leg became inflated, stiff, and unbendable, and it was so swollen he had to go up a pants size. (*Id.*, ¶¶ 23-24.) During this time he continued to inform the RNs who were passing out medication that his leg was inflamed and painful, but they told him he was scheduled to be seen in the HSU and did nothing. (*Id.*, ¶ 26.) Shilbauer was never called to the HSU. (*Id.*, ¶ 27.)

At some point (it is unclear from the complaint when) an unknown male Nurse Practitioner (NP) prescribed Shilbauer antibiotics that he needed to take three times a day. (ECF No. 1, ¶ 29.) However, the unknown RNs in charge of distributing the medications only gave him antibiotics once a day and also did not distribute any antibiotics on a couple of the days. (*Id.*, ¶¶ 30-31.) Shilbauer put in another "blue slip" requesting to be seen because he believed that the antibiotics were ineffective. (*Id.*, ¶ 32.) The unknown male NP then prescribed Shilbauer a different kind of antibiotic, but even while taking this medication Shilbauer's condition became worse. (*Id.*, ¶¶ 34-35.)

4

Shilbauer's condition deteriorated to the point that he was unable to eat and was bedridden. (ECF No. 1, ¶ 36.) Finally, on December 26, 2020, defendant CO Stanovich saw that Shilbauer was unwell and called emergency services. (*Id.*, ¶ 39.) Shilbauer was then transported to Ascension Hospital in Franklin, Wisconsin, where he was diagnosed with a staph infection, sepsis, edema, acute kidney failure, "cellutitous", and COVID-19. (*Id.*, ¶ 41.) He received emergency surgery on December 27, 2020, where eight inches of his skin and one-to-five inches of muscle tissue were removed. (*Id.*, ¶ 43.) He then had to have additional surgeries to treat his condition, had to have his wound vacuumed, and had to have a skin graft. (*Id.*, ¶¶ 44-46.) He was in the hospital for 30 days and then was transferred to Dodge Correctional Institution's infirmary unit for another 15 days. (*Id.*, ¶ 47.)

Shilbauer alleges that prior to December 26, 2020, defendants CO Haglund, CO Rodriguez, CO Dixon-Ward, and CO Stanovich were all aware of the deteriorating condition of his leg and his overall health but did nothing. (ECF No. 1, ¶ 38.)

*Analysis*

Shilbauer claims that the defendants violated his constitutional rights when they ignored his infected leg. He also states that House of Correction staff is liable for failing to train staff and for implementing policies and procedures that caused his constitutional violation.

It is unclear from the complaint if Shilbauer was a pretrial detainee at the time. If he was a pretrial detainee, his rights arise out of the Fourteenth

5

Amendment's Due Process Clause; if he was a convicted prisoner, his rights arise out of the Eighth Amendment. *See Miranda v. Cnty. of Lake*, 900 F.3d 335, 350-51 (7th Cir. 2018) (explaining that an objective reasonableness standard applies to claims brought by pretrial detainees while a deliberate indifference standard applies to claims brought by prisoners). The court need not determine whether Shilbauer was a pretrial detainee or a convicted prisoner at this time, however, because the Eighth Amendment standard is the more stringent one. The court will analyze his claims under that standard.

A prison official violates the Eighth Amendment when he is deliberately indifferent "to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "To state a cause of action, a plaintiff must show (1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent." *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). "A medical need is sufficiently serious if the plaintiff's condition 'has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would perceive the need for a doctor's attention.'" *Roe v. Elyea,* 631 F.3d 843 857 (7th Cir. 2011) (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)). Here, the worsening leg infection, as alleged, qualifies as a condition that is so obvious that anyone would recognize the need for medical attention.

To show that an officer was deliberately indifferent a plaintiff must allege "that an official *actually* knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (emphasis in original). The

6

plaintiff also "must show more than mere evidence of malpractice." *Id.* The plaintiff must show that the prison official's choices "were so 'significant a departure from accepted professional standards or practices' that it is questionable whether they actually exercised professional judgment." *Stallings v. Liping Zhang*, 607 Fed. Appx. 591, 593 (7th Cir. 2015) (quoting *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014)). These choices include when a prison official fails to act or do anything to address the serious medical need. *See Gayton*, 593 F.3d at 623-624 (reversing summary judgment in favor of a nurse who refused to examine or treat a vomiting inmate). They also include when an official delays necessary treatment, aggravating a condition or needlessly prolonging a plaintiff's pain. *Gomez v. Randle*, 680 F.3d 859, 865-66 (7th Cir. 2012).

Shilbauer may not proceed against the unknown nurses for any of their actions before he submitted the first blue slip. The HOC had a process by which a prisoner could seek medical care--formally requesting care by using the blue slip. Shilbauer informally requested care while the nurses were doing another task—passing out medication—so their lack of care provided at that time is not deliberate indifference. *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) (finding that prisoners have rules and procedures in place and officials "do not have a free-floating obligation to put things to rights, disregarding rules . . . along the way").

However, once Shilbauer submitted the blue slip and his condition was becoming noticeably worse—to the point that his thigh swelled up so much he needed bigger pants and his leg was so stiff he couldn't move it—his requests for

7

help from the nurses could rise to the level of deliberate indifference. Additionally, once he had an antibiotics prescription, the unidentified nurses's failure to appropriately administer the medication also could constitute deliberate indifference. Shilbauer may proceed on claims for deliberate indifference to medical needs against the unidentified nurses as described above.

Shilbauer may also proceed on a deliberate indifference claim against the unknown male NP for ignoring increasingly worsening symptoms and persisting in continue to prescribe ineffective antibiotics. Prison medical providers are deliberately indifferent when they refuse to alter a course of treatment despite the plaintiff's "repeated reports that the medication was not working and his condition was getting worse." *Greeno*, 414 F.3d at 654.

Additionally, Shilbauer may proceed against defendants COs Haglund, Rodriguez, Dixon-Ward, and Stanovich for their lack of action up until December 26, 2020, when Stanovich finally called emergency services. Shilbauer alleges that his condition was noticeably worsening to a point that even a non-medical professional should have recognized the need for medical care well before December 26. He also alleges that these defendants were aware his condition was worsening. At this stage, this is enough to state a claim.

Shilbauer may not proceed on a claim for failure to train, however. "[F]ailure to train claims are usually maintained against municipalities, not against individuals, and, in the Eighth Amendment context, such claims may only be maintained against a municipality." *Brown v. Budz*, 398 F.3d 904, 918 (7th Cir.

8

2005) (citing *Sanville v. McCaughtry*, 266 F.3d 724, 739-40 (7th Cir. 2001)). Shilbauer does not bring a claim against the municipality.

Shilbauer also may not proceed on a claim under *Monell v. Dept. of Social Servs. of City of New York*, 436 U.S. 658 (1978). As mentioned above, he does not name a municipality as a defendant, which is required for a *Monell* claim. *Id.* Additionally, plaintiffs can only pursue a *Monell* claim when they seek injunctive relief in addition to damages. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Because Shilbauer seeks only monetary damages, he cannot pursue a *Monell* claim.

Because Shilbauer is proceeding on claims against unknown nurses and nurse practitioners, he will need to send the named defendants discovery requests to identify the John and Jane Doe defendants. Once the named defendants answer the complaint, the court will issue a scheduling order providing more information about naming the Doe defendants.

## CONCLUSION

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Shilbauer's motion for leave to proceed without prepayment of the filing fee (ECF No. 3) is **GRANTED.**

Under an informal service agreement between Milwaukee County and this court, a copy of the complaint and this order have been electronically transmitted to Milwaukee County for service on defendants CO Haglund, CO Rodriguez, CO Dixon-Ward, and CO Stanovich. It is **ORDERED** that, under the informal service agreement, those defendants shall file a responsive pleading to the complaint

9

within 60 days. **IT IS FURTHER ORDERED** that the Clerk of Court's office shall add Unknown Nurses to the caption.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions. After the court enters the scheduling order, Shilbauer may send discovery requests (written questions or requests for documents) to the named defendants in an effort to identify the real names of the unknown nurses and nurse practitioners. Once he knows the real name of these defendants, he should file a motion identifying their real names. Again, Shilbauer should not serve any discovery requests upon the defendants until *after* the court enters a scheduling order.

**IT IS FURTHER ORDERED** that the agency having custody of Shilbauer shall collect from his institution trust account the $334.54 balance of the filing fee by collecting monthly payments from his prison trust account in an amount equal to 20% of the preceding month's income credited to Shilbauer's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If Shilbauer is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this order along with his remaining balance to the receiving institution.

10

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where Shilbauer is confined.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

>Office of the Clerk
>517 E. Wisconsin Avenue, Room 362
>Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the matter.

Shilbauer is further advised that failure to make a timely submission may result in the dismissal of this case for failure to diligently pursue it. In addition, the parties must notify the Clerk of Court of any change of address. Shilbauer is reminded that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. Shilbauer's failure to keep the court advised of his whereabouts may result in the dismissal of this case without further notice.

Enclosed is a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

Questions," this guide contains information that Shilbauer may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin this 8th day of November, 2023.

BY THE COURT

*William E. Duffin*

WILLIAM E. DUFFIN
United States Magistrate Judge