# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**MICHAEL SHILBAUER,**

        **Plaintiff,**

v.                                                     **Case No. 23-CV-1158**

**AARON HAGLUND,** *et al.,*

        **Defendants.**

## DECISION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

    Plaintiff Michael Shilbauer, who is incarcerated and representing himself, brings this lawsuit under 42 U.S.C. § 1983. Shilbauer was allowed to proceed on a claim pursuant to the Eighth Amendment for deliberate indifference to his medical needs against the defendants for allegedly failing to get him medical care for an infection in his leg. The defendants filed a motion for summary judgment for failure to exhaust administrative remedies. (ECF No. 44.) The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 5, 10, 30, 35.) The motion is fully briefed and ready for a decision.

## SUMMARY JUDGMENT STANDARD

    The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

The Prison Litigation Reform Act states in part that "[n]o action shall be brought with respect to prison conditions under §1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are

exhausted." 42 U.S.C. §1997e(a). The exhaustion requirement gives prison officials an opportunity to resolve disputes before being hauled into court and produces a "useful administrative record" upon which the district court may rely. *See Jones v. Bock*, 549 U.S. 199, 204 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 94-95 (2006)). The exhaustion rule also promotes efficiency because claims generally are resolved more quickly by an agency than through litigation in federal court. *Woodford*, 548 U.S. at 89. Accordingly, exhaustion must be complete before filing suit. *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020) (finding that an inmate failed to exhaust his administrative remedies when he filed suit instead of taking his grievance to the appropriate review board).

*Relevant Procedure for Exhausting Administrative Remedies*

At the Milwaukee County Community Reintegration Center (CRC) the grievance procedure is set forth in the Resident Handbook. (ECF No. 47-1.) A prisoner may file a grievance only after he has "addressed the problem with the dorm officer and [is] not satisfied with the result." (*Id.* at 2.) A grievance may be filed for any issue that affects a prisoner "in the area of health, welfare, a facility operation or service." (*Id.*) The grievance must address only one issue and "[b]e specific as to the incident causing the grievance." (*Id.*)

To file a grievance a prisoner needs to complete a grievance form on the kiosk. (ECF No. 47-1 at 2.) A prisoner may ask for assistance from an officer if he needs help. (*Id.*) If the kiosk is not in service, the prisoner must ask an officer for a paper form. (*Id.*) Paper forms are to be filed in the "designated lock box." (*Id.*) A supervisor

3

will review the grievance "within ten (10) working days of receiving the grievance." (*Id.*) A prisoner may only file two grievances in a week. (*Id.*) Once the prisoner is given a decision, he has three days in which to appeal. (*Id.*) The appeal is sent to the shift Captain. (*Id.*)

*Shilbauer's Allegations and Attempts to Exhaust his Administrative Remedies*

In early December 2021 Shilbauer noticed an ingrown hair on his leg that appeared to be infected. (ECF No. 1¸¶¶ 5, 17-18.) After several days, when he began to experience pain, he requested to be seen by the Health Services Unit. (*Id.*, ¶ 22.) He was not immediately seen by the HSU and his condition worsened to the point where on December 26, 2021, he had to be taken to the hospital and treated for sepsis. (*Id.*, ¶¶ 23-36.)

The defendants assert that during the month of December Shilbauer did not file a grievance about the lack of medical treatment for his infection. (ECF No. 46, ¶¶ 15-16, 20.) They note that, during his stay at CRC from August 9, 2021, through December 26, 2021, he filed a total of five grievances, though none in the month of December. (*Id.*, ¶¶ 1, 18.)

Shilbauer admits he did not file a grievance related to his infected leg. However, he asserts that the grievance procedure was unavailable to him. (ECF No. 54 at 2.) For the earlier part of December 2021, he states that the kiosks were out of order and CRC officers would not give him paper grievances. (*Id.* at 11.) This was due to a "massive COVID-19 outbreak that affected many services and supplies." (*Id.*)

4

Case 2:23-cv-01158-WED    Filed 04/22/25    Page 4 of 8    Document 65

Shilbauer notes that he had surgery on December 27, 2021, and was subsequently hospitalized for 30 days. (*Id.* at 4.) Shilbauer notes that, while in the hospital, he was no longer in the custody of CRC but in the custody of the Milwaukee County Sheriff's Department. (*Id.* at 10.) He states that he requested grievance forms from the Milwaukee County Sheriff Deputies in charge of supervising him, but they did not provide them. (*Id.* at 9.) When he was released from the hospital on January 24, 2022, he was transferred to Dodge Correctional Institution. (*Id.* at 4.)

*Analysis*

The Seventh Circuit Court of Appeals "has taken a strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). A prisoner is required to "properly use the prison's grievance process prior to filing a case in federal court." *Id.* "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). A prisoner can overcome his failure to exhaust his administrative remedies only where he can demonstrate that the grievance process was unavailable to him. *Ramirez v. Young*, 906 F.3d 530, 538 (7th Cir. 2018). A prisoner can show that a grievance process was unavailable when "(1) prison officials are 'consistently unwilling to provide any relief to aggrieved inmates'; (2) the administrative scheme is 'so opaque that it becomes, practically speaking, incapable of use;' or (3) prison administrators take affirmative action to thwart use of the grievance process," but these are "only examples, not a closed list." *Id.* (quoting *Ross v. Blake*, 136 S. Ct. 1850, 1859-60 (2016)).

5

Shilbauer argues that he did not exhaust his administrative remedies because they were unavailable to him. The defendants argue that Shilbauer had the opportunity to file complaints against the defendants for lack of care all through the month of December up until his hospitalization; thus the grievance process was not unavailable.

Every day Shilbauer was not given appropriate medical care counts as a separate violation of his constitutional rights. It does not matter, then, if Shilbauer did not file a grievance in December prior to his hospitalization, even though he had the opportunity to do so. Shilbauer was not required to grieve every instance where he was not given appropriate care. His right to grieve continued "as long as 'the defendant [had] the power' to remedy the plaintiff's condition but fail[ed] to do so." *Christmas v. Wexford Health Sources, Inc.* Case No. 17-cv-1006-RJD, 2021 WL 488097 at *# (S.D. Ill. Feb. 10, 2021) (quoting *Wilson v. Wexford Health Svcs.*, 932. F3d 513, 517, (7th Cir. 2019). In other words, Shilbauer's obligation to grieve the lack of proper medical care did not arise until the defendants either provided him treatment or no longer had the ability to provide him treatment. Even though he could have grieved the lack of treatment prior to his hospitalization, the fact such an opportunity existed does not preclude his ability to grieve while the injury is still occurring. Shilbauer was not required to exhaust his administrative remedies prior to his hospitalization because the injury was still occurring.

The court should draw all reasonable inferences in the light most favorable to Shilbauer. *Kaba v. Stepp*, 458 F.3d 678, 681 (7th Cir. 2006). Shilbauer states that he

6

was unable to exhaust his administrative remedies while hospitalized because he asked the Sheriff's Deputies multiple times for grievance forms but was not given them. The defendants argue that this bald assertion does not provide dates, times, and other details about his requests.

Once he was transferred to the hospital, Shilbauer was no longer in the custody of the CRC but in the custody of the Sheriff's Department. And Shilbauer never returned to CRC custody; once he was discharged from the hospital, he immediately was transferred to Dodge Correctional Institution. Transferring out of custody of the offending institution "precludes dismissal of [a plaintiff's] complaint because the transfer rendered administrative remedies no longer available." *White v. Bukowski,* 800 F.3d 392, 396 (7th Cir. 2015) (citations omitted). A jail or prison may overcome this presumption if the institution's handbook establishes a procedure for filing a grievance once a prisoner is transferred out of their custody, *id.*, but the CRC's handbook does not include such a procedure. Thus, once Shilbauer was hospitalized, it is clear that the ability to exhaust his administrative remedies was unavailable to him.

Exhaustion "is an affirmative defense, and consequently the burden of proof is on the prison officials." *Kaba*, 458 F.3d at 681. The defendants have not met their burden of demonstrating that Shilbauer failed to exhaust his administrative remedies. Thus, the motion for summary judgment is denied.

7

## CONCLUSION

Because the defendants have not demonstrated that Shilbauer had administrative remedies available to him while he was in the defendant's care, their summary judgment motion is denied. The court will issue an amended scheduling order at a later date resetting the case deadlines.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for summary judgment (ECF No. 44) is **DENIED.**

Dated at Milwaukee, Wisconsin this 22nd day of April, 2025.

BY THE COURT

*William E. Duffin*

WILLIAM E. DUFFIN
United States Magistrate Judge